

**FILED**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

DEC 1 5 2006



AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 06-56-GWU

WENDELL N. JONES,                                                      PLAINTIFF,

VS.                      **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                          DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of his application for Disability Insurance Benefits (DIB). The appeal is

currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.    Is the claimant currently engaged in substantial gainful activity?
      If yes, the claimant is not disabled. If no, proceed to Step 2.
      See 20 C.F.R. 404.1520(b), 416.920(b).

2.    Does the claimant have any medically determinable physical
      or mental impairment(s)? If yes, proceed to Step 3. If no, the
      claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3.    Does the claimant have any severe impairment(s)--i.e., any
      impairment(s) significantly limiting the claimant's physical or
      mental ability to do basic work activities? If yes, proceed to
      Step 4. If no, the claimant is not disabled. See 20 C.F.R.
      404.1520(c), 404.1521, 416.920(c), 461.921.

1

4.    Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.    Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6.    See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.    Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled.    If no, proceed to Step 7.    See 20 C.F.R. 404.1520(e), 416.920(e).

7.    Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled.    See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.   Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

2

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1)

3

Jones

whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

6

may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Wendell N. Jones, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of degenerative disc disease and joint conditions of the lumbar spine, a depressive disorder, borderline intellectual functioning, and being status post multiple left and right knee surgeries. (Tr. 22). Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ found that Mr. Jones retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits. (Tr. 22-7). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age, education and work experience could perform any jobs if he were limited to lifting 20 pounds occasionally and 10 pounds frequently, and carrying 10 pounds occasionally, sitting, standing, or walking no more than four hours each in an eight-hour day (no more than one hour without interruption), and also had the

7

following non-exertional impairments. (Tr. 770). He: (1) could occasionally bend and reach above shoulder level; (2) was precluded from repetitive pushing or pulling with the hands or repetitive operation of foot pedals, or climbing, crawling, squatting, kneeling or working on uneven terrain or exposure to unprotected heights; (3) had a moderate restriction on working around moving machinery or driving automobile equipment; (4) had mild limitations in activities involving marked changes in temperature and humidity; and (6) was limited to simple instructions and tasks in a task-oriented setting that did not require frequent public contact or more than marginal literacy skills. (Tr. 769-71). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the national economy. (Tr. 770-1).

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence and that they fairly depict the plaintiff's condition.

Mr. Jones presented records of a long history of knee problems and surgeries pre-dating his alleged onset date of December 1, 2003 (Tr. 56, 750). These records include an operation for a right anterior cruciate ligament (ACL) tear in 1993 (Tr. 576, 650), hospitalizations for a left clavicle and pubic rami fracture also in 1993 (Tr. 581-2), a skull fracture in 1995 (Tr. 616-17), the removal of a calcified loose body from the left knee in 2000 (Tr. 149-50), and an injury to the left hip and lumbar spine in

8

2000 which produced a CT scan showing spondylolisthesis of the L5-S1 level, but no other abnormalities (Tr. 123-4, 137). A subsequent MRI in December, 2000 showed minimal to moderate bulging at several levels and degenerative disc disease. (Tr. 236). His left ACL was torn late in 2002 (Tr. 186), but he returned to work until tearing his right ACL on November 17, 2003 (Tr. 146-7). After a right knee reconstruction by Dr. Lisle Whitman on December 12, 2003, Mr. Jones underwent extensive physical therapy (Tr. 258-431). By July 7, 2004, Dr. Whitman released his patient to return to work in a light duty position with "no underground work" and no squatting or kneeling. (Tr. 262, 665). At future visits, Dr. Whitman opined that the plaintiff's complaints of his leg giving way were due to weakness and he recommended more quadriceps strengthening. (Tr. 695). No further restrictions are given.

Consultative physical examiners Monte Edward Martin and David Muffly also identified restrictions. Dr. Martin noted some restrictions on lumbosacral range of motion as well as right knee pain and some limitation of range of motion, although the left knee was normal. (Tr. 255). He opined that if Mr. Jones was able to return to work, it would only be at "sedentary or extremely light activity," but added that he had been able to sit for 30 minutes without complaint and had good upper body

9

Jones

strength and coordination. (Tr. 256).[1] Dr. Muffly examined Mr. Jones in October, 2004 and reviewed Dr. Whitman's notes and restrictions. (Tr. 688). Dr. Muffly noted that Mr. Jones was wearing a right knee brace, but was not using a cane. (Tr. 689). He limped on his right leg and could only squat halfway down, but the right knee only lacked 5 degrees of full extension and had only "mild" ACL laxity. (Id.). There was a "moderate" ACL deficiency of the left knee, with 1+ effusion, some "grinding," but full extension. (Id.). Lumbosacral tenderness was noted but range of motion was almost full. (Id.). Dr. Muffly provided restrictions compatible with the ALJ's hypothetical question. (Tr. 705). No evidence of greater restriction was given by any medical source.

The plaintiff argues on appeal that the ALJ did not properly evaluate his subjective complaints of pain, and that he was able to show objective medical evidence to confirm the severity of his underlying medical condition, citing Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986). The ALJ found that it was credible that Mr. Jones had back and knee pain, but that it was not as restrictive as he alleged, based on the conclusions of the examining and

---

[1]A state agency physician, Dr. P. Saranga, concluded that the plaintiff could perform light level exertion with non-exertional restrictions compatible with the hypothetical question. (Tr. 530-6). Not all records were available for his review, however, although Dr. Martin's report was mentioned. (Tr. 536).

10

Jones

treating physicians. (Tr. 24). Therefore, it was reasonable to find that the severity of the underlying conditions did not meet the Duncan standard.

The plaintiff raises no specific objection to the mental restrictions or to the ALJ's finding of "marginal" literacy. The mental restrictions are generally compatible with the conclusions of Examining Psychologist Phil Pack. (Tr. 251-2). Both Mr. Pack and another psychologist, Jeffrey Grand, found less than a third grade reading level, but in light of the plaintiff's long work history in a skilled occupation (Tr. 769), the disagreement between the psychologists as to whether the plaintiff was malingering on testing is moot.

The decision will be affirmed.

This the ___/5___ day of December, 2006.

G. WIX UNTHANK
SENIOR JUDGE

11